UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAWN M. RAYMOND,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner,<br>Social Security Administration,<br><br>　　　　　Defendant. | CASE NO.　　C05-5581RJB<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for June 9, 2006 |

　　　　Plaintiff, Dawn Raymond, has brought this matter to the attention of the federal court following the administrative denial of her application for social security benefits. This matter has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). The court has reviewed the parties' briefs and submits the following report and recommendation for the presiding U.S. District Court Judge's review.

FACTUAL AND PROCEDURAL BACKGROUND

　　　　Plaintiff, Dawn Raymond, was born in 1967. She graduated from High School and has an associates degree in law enforcement and criminal justice. She has work experience as a security guard, and also as a shift manager for Pizza Hut and Taco Bell. She hurt her back in October 1994, and at that time she moved back in with her mother because of her back problems and the need for help in taking care of her son. Ms. Raymond testified that she had her first back surgery in October 1994 and additional

surgeries in 1995, 1996, and 1997. Ms. Raymond testified that she also did some daycare work in 2000, where she states she had trouble bending over and picking up the children and toys.

Plaintiff alleges she has been unable to work, due to back pain, degenerative disc disease, and headaches, since October 1, 2000. She filed applications for Social Security and SSI Disability Benefits on August 26, 2002 and August 16, 2002. Her applications were denied initially, on reconsideration, and also by an ALJ, in a decision dated June 23, 2004. (Tr. 17-26). Ms. Raymond requested review by the Appeals Council which, on July 22, 2005, denied her request for review, leaving the decision of the ALJ as the final decision of the Commissioner.

Plaintiff now brings the matter to federal court to challenge the administration's decision. Specifically, Ms. Raymond argues (i) the ALJ Failed To Give Appropriate Weight To The Opinions Of Claimant's Treating Physicians: (ii) the ALJ Failed To Properly Consider Claimant's Testimony Regarding Her Symptoms and Limitations; (iii) the ALJ Failed To Properly Consider Lay Witness Evidence: (iv) the ALJ Improperly Determined Claimant's Residual Functional Capacity; (v) the Commissioner Failed To Meet The Burden Of Showing That The Claimant Can Perform Any Work In The National Economy; and (vi) the Appeals Council Erred In Failing To Properly Consider New Evidence.

After reviewing the record, the Court should find that the ALJ's decision is properly supported by substantial evidence in the record and free of any legal error. The Court should affirm the administration's decision.

## DISCUSSION

This Court must uphold the Secretary's determination that plaintiff is not disabled if the Secretary applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

A.  *THE ALJ PROPERLY WEIGHED THE MEDICAL EVIDENCE IN THE RECORD*

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ erroneously "failed to find that Ms. Raymond has medical conditions that can cause pain" despite medical evidence to the contrary. Plaintiff's Opening Brief at 10. After carefully reviewing this argument, the ALJ's written decision and defendant's opposition, the court is not persuaded.

Plaintiff's argument is not supported by the record. The ALJ noted that the "medical evidence indicates that the claimant has degenerative disc disease, status post laminectomy discectomy in 1994, and addition back surgeries in 1995, 1996, and 1997 (Exhibit 5F)," in addition to headaches. Tr. 22. The ALJ found that these impairments "significantly limits her ability to perform basic work activities, and thus is severe." Id. The ALJ proceeded to evaluate the pain associated with the limitations noted above. Tr. 22, 23, 24. Based on sufficient evidence in the record, the ALJ properly concluded that Ms. Raymond's impairments (and the pain associated with those impairments) limited her carrying about to a maximum of 10 pounds. She also was limited in her ability to stand and walk (for only about 2 hours), and sit (for about 6 hours in an 8-hour workday). Tr. 24. In sum, plaintiff's allegation that the ALJ did not properly consider the medical evidence is not supported by the record.

B.  *THE ALJ PROPERLY CONSIDERED AND WEIGHED MS. RAYMOND'S CREDIBILITY AND THE STATEMENTS OF THE LAY WITNESSES SUBMITTED IN SUPPORT OF MS. RAYMOND'S*

REPORT AND RECOMMENDATION
Page - 3

*APPLICATION FOR BENEFITS*

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints of pain. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). Similarly, the ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

An ALJ may reject a claimant's subjective pain complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, *supra*, the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically. Here, the parties agree that given the medical evidence supporting an underlying impairment and no evidence of malingering, if the ALJ rejects plaintiff's testimony, the ALJ must provide clear and convincing reasons for doing so. Smolen, 80 F.3d at 1281-1282.

Plaintiff argues the ALJ's reasoning for rejecting plaintiff's testimony in this case do not meet the clear and convincing standard. After reviewing the ALJ's decision and the administrative record, the court finds that the ALJ properly weighed plaintiff's testimony. In his decision, the ALJ summarized the medical evidence and then proceed to summarize plaintiff's statements in light of the medical opinions. With regard to plaintiff's statements and the statements of her mother, Lou Ann Raymond, the ALJ wrote the following:

> When the claimant filed her application for disability she stated that she has constant pain with a limited ability to stand and sit. She said she was limited to lifting 10 pounds. She also indicated that she falls frequently due to a damaged left side (Exhibit 1E). The claimant

stated that she could sit, walk, and stand for one and one-half hours. She indicated that bending caused pain (Exhibit 4E). She manages to do chores but has to take breaks due to pain. She is able to drive and do her own grocery shopping. She reads and watches television. She prepares her own meals, cooks for two, and cares for her son. She wears a back support (Exhibit 5E). The claimant stated that she needs help grocery shopping, lifting heavy objets, putting things on shelves, and doing things that take a lot of standing. She needs help because her ankle gives way and causes her to fall (Exhibit 6E). Even thought the claimant complained of headaches, the medial evidence shows they improved with medication. There seems to be no apparent limitation due to headaches, as the claimant shops, drives, cooks, and goes to games. She complained of carpal tunnel problems but since her release surgery in September 2002 (Exhibit 9F), there is no evidence to show that she has had significant continuous limitations using her dominant left hand.

The claimant's mother, Lou Ann Raymond, corroborated the claimant's statements. She basically stated that all activities cause the claimant to have extreme pain (Exhibit 8E). The mother testified that the claimant does nothing but watch television all day. I do not doubt this, but I believe it is volitional. As noted above, the claimant is capable of significant activity according to her own statements: she drives, goes to her son's games (Exhibit 16F, p.8), shops, cooks and cares for her son. In fact the claimant's doctor released her to return to sedentary or so [sic] work in 1997. However, she elected to stay home and do child care instead (Exhibit 10F, pp. 20-21), which is laudable, but does not support her allegations of disability.

While the claimant has a significant history of multiple back surgeries and degenerative disc disease, her allegations of disabling limitations are not supported by the objective medical evidence. The claimant alleged back pain that radiated up to the back of the neck and head, down into the back and into the left leg with weakness in her left leg that caused her to fall down frequently. Yet, a physical examination revealed normal gait, negative Romberg's test, and negative finger-to-nose test. No fixed muscle spasm was detected. Hips and shoulders were level to the floor, and there was no scoliosis. Straight leg raising was negative bilaterally. Motor sensory and vascular were intact. The claimant had full range of motion of the shoulders elbows, wrists, hips, knees, and ankles bilaterally. She had no difficulty ambulating (Exhibits 5F, 9F, 10F). It was thought that the claimant was most likely impaired due to extreme deconditioning over time and obesity (Exhibit 10F). Following the excision of a ganglion cyst and carpal tunnel release of the left wrist, the claimant demonstrated full range of motion of her wrist and her neurocirculatory status was intact (Exhibit 9F). The claimant is credible insofar as her subjective allegations mainly limit her to sedentary work.

Tr. 23-24.

It is important to note that the ALJ did not completely discredit everything Ms. Raymond stated. To a large extent the ALJ relied on her statements and ability to perform certain tasks and activities. Nonetheless, the reasons given by the ALJ to reject plaintiff's claims of total disability are clear and convincing. The ALJ relied on his review of the medical evidence when he considered plaintiff's subjective allegations of total disability. The medical evidence cited by the ALJ properly supports the notion that Ms. Raymond is not completely disabled and able to perform some types of work. In conjunction with his review of the medical evidence, the ALJ relied on Ms. Raymond's description of her abilities and daily activities to conclude that her limitations and impairments did not support her claims of

total disability.  Finally, the ALJ properly addressed Lou Ann Raymond's testimony which was inconsistent with plaintiff's own statements and the medical evidence supporting the ALJ's finding that Ms. Raymond is capable of performing sedentary work.

C.  **THE ALJ PROPERLY DETERMINED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).  In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

Here, the ALJ explained plaintiff's medical impairments related to her degenerative disc disease, her back surgeries and headaches, and the ALJ found, "[Ms. Raymond retains] the ability to lift and carry a maximum of 10 pounds.  She can stand and walk for about 2 hours, and sit for about 6 hours in an 8-hour workday." Tr. 24.

Ms. Raymond now argues the ALJ's RFC assessment was made in error because he did not include the appropriate medical evidence, plaintiff's own testimony about her symptoms and limitations and the testimony of her mother, Lou Ann Raymond.  Plaintiff's Opening Brief at 16.  Each of these has been raised and discussed above, and the court rejected the arguments that the ALJ failed to properly consider the medical evidence, plaintiff's testimony or the testimony of Lou Ann Raymond.  After reviewing the record, this court does not find any error in the ALJ's evaluation of the medical evidence and the RFC assessed for Ms. Raymond.  The RFC assigned by the ALJ is properly supported, particularly by Dr. Hoskins, who reviewed Dr. Whipples opinions and notes and who opined that Ms. Raymond would be capable of light work activity (a higher level of work than the sedentary level assigned by the ALJ).

D.  **THE ALJ DID NOT ERR WHEN HE RELIED ON THE MEDICAL VOCATIONAL GUIDELINES**

At step-five of the ALJ's analytical process used to determine disability, the ALJ will generally refer to Medical Vocational Guidelines ("GRIDS"), which were adopted by the Secretary of Health and Human Services in 1978.  The ALJ may apply GRIDS, when appropriate, to meet his burden at step five instead

of taking testimony from a vocational expert.  *See* Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998).

The GRIDS correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled. The ALJ must apply the GRIDS if a claimant suffers only from an exertional impairment. 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a) & (e) (1988). However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question and other testimony is required. Id. at § 200.00(e)(1).  When a claimant suffers from both exertional and nonexertional impairments, the ALJ must first consult the grids to determine whether a finding of disability can be based on the exertional impairments alone. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2). However, if the exertional impairments alone are insufficient to direct a finding of disability, the ALJ must use the grids as a framework but must independently examine the additional consequences resulting from the nonexertional impairment(s). Id. at 1156.

Here, plaintiff argues the ALJ erred in his reliance on the GRIDS in this case because, "Ms Raymond has physical impairments which cause non-exertional limitations, including postural limitations and pain."  The record does not support this contention.  Plaintiff did not present any evidence to the ALJ to support a significant non-exertional limitation that would preclude the ALJ's use of the GRIDS.   As discussed above, the ALJ properly considered plaintiff's severe impairments, which are exertional impairments.  Plaintiff does not suffer from nonexertional or mental impairments.

In applying the GRIDS, the ALJ found Plaintiff was 36 years of age at the time, and thus, she was classified as a younger individual under the Guidelines.  *See* 20 C.F.R. §§ 404.1563(b), 416.963(b). Plaintiff had attained "more than a high school education", but had no transferrable skills from any past relevant work.  *See* 20 C.F.R. §§ 404.l564(b)(3), 404.1568, 416.964(b)(3), and 416.698.  Ms. Raymond was found to retain the ability to perform the full range of sedentary work.  Under Rule 202.21, the Guidelines directed a finding of not disabled.  *See* 20 C.F.R. Pt. 404, subpt. P, app. 2.   The ALJ properly relied on the GRIDS to support his finding that Ms. Raymond is not disabled.

E.   *"NEW EVIDENCE" DOES NOT WARRANT REMAND OR REOPENING THE ADMINISTRATIVE RECORD*

Under the Social Security Act, the court may order the administration to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good

cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  Thus, the plaintiff must show that the proffered new medical evidence is: "(1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The concept of materiality requires in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently.  Finally, claimant must show (3) good cause for [his] failure to present the evidence earlier."  Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988) (internal citations omitted); see Sanchez v. Secretary of Health and Human Serv., 812 F.2d 509, 511 (9th Cir.1987) and Booz v. Secretary of Health & Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984).

While Ms. Raymond's appeal was pending before the administration's Appeals Council, Ms. Raymond's attorney submitted additional medical evidence to document the nature and extent of Ms. Raymond's functional limitations.  In its notice declining review, the Appeals Council stated: "We also looked at records dated September 20, 2004 to February 16, 2005 from Dr. Whipple, records dated January 31 to March 7, 2005 from Dr. Chenault and EMG dated February 22, 2005 from Dr. Miller," but that because this information "is about a later time," it does not affect the ALJ's decision about whether Ms. Raymond was disabled prior to May 28, 2004. (Tr. 7).

Plaintiff argues the "new evidence" from Dr. Chenault and Dr. Miller shows that Ms. Raymond was continuing to experience instability in her left ankle and left L5 radiculopathy involving her peroneal nerve, and it was error for the Appeals Council not to reverse the ALJ's decision based on this new evidence.  After reviewing the additional new evidence and the arguments of counsel, this court finds that the evidence plaintiff provided to the Appeals Council does not warrant remanding this matter for further consideration.  The ALJ fairly developed and reasonably reviewed the record and Ms. Raymond's application.  The evidence presented to the Appeals Council is cumulative of evidence in the record and the Appeals Council gave specific and legitimate reasons for denying plaintiff's request to remand the matter to allow the ALJ the opportunity to review the additional medical records.  Moreover, defendant provides authority suggesting this court is without jurisdiction to consider an Appeals Council's denial of review. 42 U.S.C. § 405(g); 20 C.F.R. §§ 416.1481, 422.210; see also Matthews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to

review the Appeals Council decision to deny review."); Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1994) (court has no jurisdiction to review Appeals Council's action on denial of review, because "it is a nonfinal agency action"). The Ninth Circuit Court of Appeals has yet to rule on whether the courts have jurisdiction to review an Appeals Council's denial of review.

## CONCLUSION

Based on the foregoing, the Court should AFFIRM the administration's decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 9, 2006**, as noted in the caption.

DATED this 18th day of May, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge